STATE OF IOWA, v. MANHATTAN OIL COMPANY OF DES MOINES, IOWA; J. P. HOWE, Pres. and Mgr.; W. E. HOWE, Vice Pres.; ADA B. COON, Secretary; AMANDA L. HOWE, Treasurer, Appellants.   Two Cases.

**Adulteration of products:** STATUTES. No purity test for boiled linseed oil is provided for by section 2510-e of the Code Supplement; the test for boiled oil is the temperature at which it must be heated: So that one exposing for sale or selling boiled linseed oil, composed partly of linseed oil and partly of petroleum, is not guilty of a violation of the statute because the same was not chemically tested for purity.

**Same:** INFORMATION: SUFFICIENCY. The recital in an information "said boiled oil being misbranded and adulterated" was not the allegation of any fact, but the mere conclusion of the pleader; and failed to charge a violation of the statute requiring any vessel containing the oil to be distinctly marked as pure linseed oil raw or boiled.

*Appeal from Polk District Court.*—HON. CHARLES S. BRADSHAW, Judge.

FRIDAY, MAY 17, 1912.

Two informations were filed in the police court. The first of these charged that the defendant company and officers exposed for sale and did sell to one Jenney about October 24, 1910, "a certain product called 'boiled linseed oil,' which was not pure linseed oil, in that it did not answer the chemical test for purity recognized in the United States Pharmacopœia. The same being misbranded and adulterated." The second information filed was a like charge, save that the sale was alleged to have occurred about November 1st of the same year. The causes reached the district court, where on trial defendants were convicted and appeal.—*Reversed.*

*Hugh Myers* and *Ryan & Ryan* for appellants.

*George Cosson,* Attorney General and *Thomas J. Guthrie,* for the State.

LADD, J.—The parties stipulated that on October 24, 1910, and also about November 1st, of the same year, defendants sold to one Jenney a barrel of oil labeled on the head thereof "Wright & Armstrong, Linseed Oil Works, Old Process Kettle Boiled Linseed Oil, Minneapolis, Minn.," and on the other end, "Not sold or intended for food or medicinal purposes"; that each barrel was bought as boiled linseed oil; that each barrel contained forty-five percent of petroleum, the same not being illuminating oil and not having drying properties; that same was not sold for food or medicinal purposes; and that defendants purchased said barrels of oil at Omaha, Neb., where they were delivered by the seller to the carrier, which conveyed them to Des Moines, where they were deposited in defendant's place of business in connection with other articles of merchandise and there kept without disturbing the

contents of the barrel until sold to Jenney. Appellant contends: (1) That neither information charged the commission of a misdemeanor; (2) that the only test defined by statute for boiled linseed oil is the temperature at which required to be boiled; (3) that the statute is in violation of the provisions of the Constitution in that it is a denial of due process of law; and (4) that the prosecutions of defendants were in violation of the provision of the statute of the United States relating to interstate commerce.

Section 2510-e of Code Supplement reads:

No person, firm or corporation shall manufacture for sale or expose for sale or sell within this state any flaxseed or linseed oil, unless the same answers a chemical test for purity recognized in the United States Pharmacopœia, or any flax seed or linseed oil as "boiled linseed oil" unless the same shall have been put in its manufacture to a temperature of 225 degrees Fahrenheit.

The next section prohibits the exposing for sale or selling unless this is done and the barrel "containing such oil has distinctly and durably marked therein the true name of such oil in ordinary bold faced capital letters not less than five lines pica size, the words 'pure linseed oil—raw,' 'pure linseed oil—boiled,' as the case may be and the name and address of the manufacturer."

Appellant contends that the section quoted does not provide a test of purity for boiled linseed oil, for that (1) linseed oil only is mentioned in connection with the defined test, and (2) "the United States Pharmacopœia" contains no test therefor.

1. ADULTERATION
OF PRODUCTS:
statutes.

An examination of the last edition of that work (assuming the last edition to have been intended) bears out this contention. It purports to be a list of drugs, including products of known origin and synthetized products of definite compositions in common use in the medical profession, the identity, purity, and strength of which can be determined, and excluding mixtures or com-

pounds, the manufacture or mixture whereof is kept secret or controlled by unlimited proprietary or patent rights. Under the heading "Linseed Oil," it is defined: "A fixed oil expressed from linseed. It should be kept in well stoppered containers. Linseed oil which has been 'boiled' should not be used or dispensed." Then follow descriptions and tests appropriate for linseed oil and a statement of the average dose. Nothing appears which purports to fix a test for boiled oil, which is an article of commerce, and of course this would be inappropriate for this work, as it is not used nor dispensed as a medicine. There is reason then for construing the prohibition of selling or exposing for sale as relating solely to raw linseed oil, for no test of purity for boiled linseed oil appears to be contained in the book. The test defined in the statute for that is not purity, but the temperature at which it has been boiled. It will not do to say that all linseed oil was intended by the Legislature when the chemical test to be applied is only for linseed oil raw. Moreover, it is well known that a dryer ordinarily is added to linseed oil before boiling, and that the object in boiling is to condense so that it will dry more readily. Thus, an authority says that: "The usual method of producing boiled oil in this country is by the addition to raw oil of four to eight percent of concentrated dryer; that is, a liquid solution of metallic salts." And farther on that "five parts of manganese dioxide dryer to ninety-five percent of raw linseed oil is a proper combination to produce a good drying oil." In view of the fact that a dryer is usually put in linseed oil before boiling, and of the further fact that the United States Pharmacopœia excludes boiled linseed oil, we are inclined to construe the section quoted in so far as fixing a test of purity as not applicable to boiled linseed oil. This conclusion is somewhat confirmed by the enactment of chapter 110 of the Acts of the 13th General Assembly adding a separate test for boiled linseed oil. *State v.*

*Holton Gray Co.*, 148 Iowa, 724, is not inconsistent herewith. There the information contained two counts, one charging the sale of raw linseed oil and the other the sale of boiled linseed oil. A demurrer to the last count was sustained, and it was dismissed in the district court and the statute upheld as constitutional in so far as it prohibited the sale of raw linseed oil other than that which would stand the test of purity as prescribed in the statute, though no attention was given to the circumstance that the statute, as it then stood, did not indicate which of the eight editions of the United States Pharmacopœia should constitute the test.

The requirement in the following section that a vessel containing boiled linseed oil be branded as therein required seems somewhat inconsistent with this conclusion and indicates that possibly the Legislature might have misapprehended the scope of the United States Pharmacopœia. However that may be, the information contained no charge of violation of the statute last mentioned, and we do not understand the state to so contend. True, following the charge in the information are these words: "The same being unbranded and unadulterated." This was not an allegation of any fact, but a mere recital of the conclusion of the pleader. *People v. Weber*, 133 Cal. 623 (66 Pac. 38); *Lasindo v. State*, 2 Tex. App. 59; *State v. Keerl*, 29 Mont. 508 (75 Pac. 362, 101 Am. St. Rep. 579); *State v. McCormick*, 27 Iowa, 403.

2. SAME: information: sufficiency:

As no offense was charged in either information, the judgments are *reversed.*